**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| SHAUN PATRICK HILLMAN,<br><br>  Plaintiff,<br><br>vs.<br><br>LESLIE WAGERS, et al.,<br><br>  Defendants. | No. C14-3053-MWB<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

Defendants' motion for summary judgment (Doc. No. 16) has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. Plaintiff has not filed a resistance and I find that oral argument is not necessary. The motion is fully submitted.

## II.  PROCEDURAL HISTORY

Plaintiff commenced this action in the United States District Court for the Southern District of Iowa on August 21, 2014, while he was incarcerated at the Fort Dodge Correctional Facility (FDCF). His complaint (Doc. No. 12), as supplemented, names various FDCF employees as defendants and includes claims of failure-to-protect and retaliation. On September 5, 2014, venue was transferred to this court because FDCF is located in this district. Doc. No. 6. On January 30, 2015, I entered an initial review order (Doc. No. 11) pursuant to 28 U.S.C. § 1915(e)(2). While I expressed some doubt that the complaint states a viable constitutional claim, I directed the Clerk to file the complaint and ordered defendants to file a response. Doc. No. 11 at 5-6.

On February 11, 2015, plaintiff filed a motion (Doc. No. 13) to amend his complaint to add an additional party and a new retaliation claim.[1] Namely, he asserted that Sergeant Jenson should be added as a party and that several defendants prevented him from moving to Boone-Unit from A-Unit because he filed the instant lawsuit. On June 25, 2015, I entered an order (Doc. No. 19) in which I noted that the proposed amendment appeared to be futile because plaintiff did not allege facts sufficient to show (a) that he complied with 42 U.S.C. § 1997e(a) and (b) and that but for an unconstitutional, retaliatory motive the plaintiff's placement in A-Unit would not have occurred. However, I afforded plaintiff an opportunity to supplement his motion to amend complaint to address these flaws. Doc. No. 19 at 8. I directed him to supplement his motion to amend by submitting an additional statement and informed him that if he did not do so, the court would assume that he is resting on the allegations that he included in his original complaint. *Id*.

Plaintiff did not submit an additional statement. As such, I entered an order (Doc. No. 21) denying his motion for leave to amend on August 12, 2015. In considering defendants' motion for summary judgment, I will rely only on the allegations and claims contained in plaintiff's original complaint.

On March 13, 2015, defendants filed an answer (Doc No. 15) in which they asserted that they acted in good faith and did not deprive plaintiff of any constitutional right. They also asserted that plaintiff did not properly exhaust his administrative remedies as 42 U.S.C. § 1997e(a) requires. Defendants then filed their motion for summary judgment (Doc No. 16) on May 11, 2015, arguing that plaintiff has failed as a matter of law to establish a violation of his constitutional rights. After plaintiff failed to file a timely

---

[1] Plaintiff's original retaliation claim alleged that he was being held on A-Unit, or in the "hole," as a result of filing this lawsuit. His proposed new retaliation claim was similar, as plaintiff contended that the defendants prevented him from moving back to Boone-Unit, which has more privileges, because he filed this lawsuit.

resistance, I entered an order (Doc. No. 18) establishing a final deadline of June 19, 2015, for any resistance materials and advised plaintiff that if he did not file a resistance, "the motion for summary judgment will be deemed to be unresisted and, therefore, may be granted without further notice pursuant to Local Rule 56(c). Doc. No. 18 at 1. Plaintiff did not file a resistance.

### III. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948-49 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Thus, "the substantive law will identify which facts are material." *Schilf*, 687 F.3d at 949 (quoting *Anderson*, 477 U.S. at 248) (internal quotation mark omitted). "To establish a genuine issue of material fact, [a party] may not 'merely point to self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [his or her] favor.'" *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013) (quoting *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)). Typically, the moving party must support its motion by using "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", to show that there is no genuine issue of material fact before the court. Fed. R. Civ. P. 56(c)(1)(A). Since a "'party's own testimony is often self-serving,'" all "particular factual allegations [must be] scrutinized for 'independent documentary evidence'" to be considered legally competent. *Argenyi*, 703 F.3d at 446 (citations omitted).

The court must view all "the evidence in the light most favorable to the nonmoving party and giv[e] the nonmoving party the benefit of all reasonable inferences." *Crawford v. Van Buren Cnty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1035 (8th Cir. 2010)). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In order to deny a motion for summary judgment, "the evidence must be 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (quoting *Anderson*, 477 U.S. at 248 (1986).

Procedurally, "[a] movant for summary judgment . . . must identify those portions of the record which . . . demonstrate the absence of a genuine issue of material fact." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). If the moving party has done so, then the nonmoving party "must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (citing *Torgerson*, 643 F.3d at 1042). "Speculation and conjecture are insufficient . . . ." *Id.* at 794. (citing *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006)). If the record, viewed as a whole, "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 792. (citing *Torgerson*, 643 F.3d at 1042). Throughout the summary judgment stage, "the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." *Schilf*, 687 F.3d at 949 (citing *Anderson*, 477 U.S. at 249).

## IV. ANALYSIS

### A. *Overview of Claims Brought Pursuant to 42 U.S.C. § 1983*

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. The statute was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, Section 1983 provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## B. Plaintiff's Failure to Respond

As previously noted, plaintiff did not file a response to the motion for summary judgment. Nor did he request an extension of the resistance deadline. Pursuant to this court's local rules, the motion may be granted for this reason without notice. *See* LR 7(f) ("If no timely resistance to a motion is filed, the motion may be granted without notice."); LR 56(c) ("If no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court. . . ."). Before recommending such action, however, I must consider whether defendants have met their burden of showing that summary judgment is appropriate. *See Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) (explaining that court must still determine that the moving party is entitled to judgment as a matter of law even if the nonmoving party did not oppose the moving party's contentions); *Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, 149 (8th Cir. 1981) (requiring court to "inquire into the merits of [a motion to dismiss] and to grant or deny it, as the case may be, in accordance with the law and the relevant facts"); Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion, . . . grant summary judgment if the motion and supporting materials—including facts considered undisputed—show that the movant is entitled to relief . . . or . . . issue any other appropriate order").

Having reviewed the record, I recommend that the motion for summary judgment be granted for the reasons stated in defendants' brief, as I find defendants have accurately described the applicable law and have properly applied that law to the undisputed material facts. The record, even when viewed in the light most favorable to plaintiff, fails to establish a genuine issue of material fact with regard to both (a) whether defendants violated plaintiff's constitutional rights and (b) whether defendants are entitled to qualified immunity.

6

## C. The Failure-to-Protect Claim

Prisoners have a right to be free from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Latimore v. Widseth*, 7 F.3d 709, 712 (8th Cir. 1993) (holding that a plaintiff's "Eighth Amendment right . . . 'to be protected from harm by fellow inmates'" is "well established in the law" (quoting *Smith v. Marcantonio*, 910 F.2d 500, 501 (8th Cir. 1990))). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *see also Andrews v. Siegel*, 929 F.2d 1326, 1330-31 (8th Cir. 1991) (noting that "some violence in prisons may be unavoidable due to the character of the prisoners" (quoting *Martin v. White*, 742 F.2d 469, 475 (8th Cir. 1984)) (internal quotation mark omitted)). To establish an "unconstitutional failure to protect from harm [claim], [the plaintiff] must show (1) an 'objectively, sufficiently serious' deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant was deliberately indifferent to the substantial risk of serious harm." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (citation omitted) (quoting *Farmer*, 511 U.S. at 834); *accord Crow v. Montgomery*, 403 F.3d 598, 601-02 (8th Cir. 2005) (citing *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) and *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998)); *see also Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002) (discussing what must be established to succeed on a constitutional failure to protect claim); *Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir. 1996) (stating that the first requirement is intended to "ensure[] that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension" and the second requirement is intended to "ensure[] that 'only the unnecessary and wanton infliction of pain implicates the [Constitution]'" (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991))).

Here, the undisputed material facts are as follows: When an offender becomes an inmate of the Iowa Department of Corrections, policy requires staff to ask the offender

7

whether he or she has any known enemies or safety problems with other inmates. Doc. No. 16-2 at ¶ 7. Inmates are instructed to notify any staff member if a danger or problem arises. *Id*. at ¶ 8. All staff are trained to take immediate action to ensure the safety of an inmate if such inmate complains about a safety issue. *Id*. The Iowa Department of Corrections has a formal process that protects the safety of inmates and where they are placed within an institution. *Id*. at ¶ 9. The plaintiff became an inmate of FDCF on April 3, 2014, and was housed in the Boone-Unit. *Id*. at ¶ 10.

Plaintiff alleged that on June 4, 2014, he was raped by the inmate who shared his cell (the Alleged Assailant). *Id*. at ¶¶ 3, 12-13. When plaintiff arrived at FDCF, there was no record that he had an enemy situation with the Alleged Assailant; and immediately prior to the alleged sexual assault nothing indicated plaintiff had an enemy situation with the Alleged Assailant. *Id*. at ¶¶ 11-12. On the same date plaintiff alleged that the rape occurred, that is, June 4, 2014, plaintiff and the Alleged Assailant were separated and the matter was addressed pursuant to the Prison Rape Elimination Act ("PREA"). *Id*. at ¶ 14. Plaintiff was taken to the hospital for a rape test kit and investigators interviewed plaintiff and the Alleged Assailant. *Id*.

The Alleged Assailant was moved to A-Unit on June 5, 2014. *Id*. at ¶ 17. The Alleged Assailant was then returned to Boone-Unit on June 13, 2014, after the investigation revealed that no assault occurred and any sexual contact between plaintiff and the Alleged Assailant was consensual. *Id*. at ¶¶ 15, 17. Plaintiff remained on Boone-Unit in a protective, single cell until July 8, 2014,[2] when he got angry and frustrated as a result of the investigation into the sexual assault and was moved to A-Unit. Doc. No. 1 at p. 5. Plaintiff was told that he would probably stay in A-Unit until he was transferred to another facility. *Id*.

---

[2] It appears that plaintiff and the Alleged Assailant were housed on Boone-Unit from June 13, 2014 until July 8, 2014.

The Alleged Assailant allegedly threatened to harm plaintiff for snitching sometime between June 13, 2014 and July 8, 2014. Doc. No. 16-2 at ¶ 18. The Alleged Assailant was placed in an A-Unit cell near the plaintiff on August 7, 2014, and discharged his sentence on August 8, 2014. *Id*. at ¶ 16; Doc. No. 1 at p. 5. Plaintiff left FDCF on March 10, 2015. Doc. No. 16-2 at ¶ 10.

While confined at FDCF, plaintiff filed nine grievances between April 3, 2014, and August 21, 2014 (the date plaintiff filed this lawsuit). Doc. No. 20 at p. 1. The eight grievances submitted prior to July 11, 2014, addressed issues that are unrelated to the claims that the plaintiff included in his complaint. *Id*. at pp. 5-28. They raised a variety of issues including: inappropriate actions of other inmates while showering; classification, housing, status or placement within the Fort Dodge Correctional Facility; tattooing; rule book and policy access; inappropriate actions of other inmates while in his cell; and the loss of another inmate's job. *Id*.

On July 11, 2014, plaintiff submitted a grievance related to the alleged sexual assault that occurred on June 4, 2014. *Id*. at p. 30. The grievance alleged that he had been raped on June 4, 2014, that he took a rape kit test in the hospital but did not get any results back, that he did not receive any counseling and that he was getting blamed for the rape. *Id*. It also stated that the Alleged Assailant told everyone about the incident, that the plaintiff was being told that inmates in protective custody status were being paid to jump him and that one inmate tried to jump him on June 28, 2014. *Id*. The grievance acknowledgment and receipt from the Iowa Department of Corrections is dated July 14, 2014, and indicates that the grievance was non-grievable and would be passed to PREA investigators. *Id*. at p. 29.

Given this record, it cannot be said that any "act or omission [by the named defendants resulted] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). None

of plaintiff's grievances concern any inmate that shared his cell and his July 11, 2014, grievance does not complain that anyone failed to protect him from the Alleged Assailant. Doc. No. 20 at pp. 5-30. Additionally, the other evidence of record does not establish that defendants were "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed].'" *Schoelch*, 625 F.3d at 1046 (quoting *Farmer*, 511 U.S. at 837); *see also Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (stating that a showing of deliberate indifference "mandat[es] the prisoner prove the official both knew of and disregarded 'an excessive risk to inmate health or safety'" (quoting *Farmer*, 511 U.S. at 837)); *Pagels*, 335 F.3d at 740 (providing that a prison guard's negligence is not enough to establish reckless indifference); *Andrews*, 929 F.2d at 1330 (stating that a plaintiff "'must show the defendant[] [was] deliberately indifferent to his constitutional rights, either because [the defendant] actually intended to deprive him of some right, or because [the defendant] acted with reckless disregard of his right to be free from violent attacks by fellow inmates'" (quoting *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984))).

Because there is no evidence that the Alleged Assailant posed any risk to plaintiff prior to the alleged rape, plaintiff offers insufficient facts to support the conclusion that the defendants or any other prison official acted in a deliberately indifferent manner. *See Walls v. Tadman*, 762 F.3d 778, 783 (8th Cir. 2014) (concluding that plaintiff failed to show negligence, much less deliberate indifference, because he asserted that he did not face an enemy situation); *Lenz v. Wade*, 490 F.3d 991, 995-97 (8th Cir. 2007) (making clear that neither unsupported conjecture nor negligence regarding a substantial risk of serious harm to inmates is sufficient to prove deliberate indifference); *Jackson*, 140 F.3d at 1152 (pointing out that the matter of deliberate indifference must be determined with regard to the relevant prison official's knowledge at "the time in question, not with hindsight's perfect vision" and that "'threats between inmates are common and do not,

under all circumstances, serve to impute actual knowledge of a substantial risk of harm'" (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996))).

Plaintiff asserts that the Alleged Assailant and other inmates threatened and/or harassed him after June 5, 2014. However, the record indicates that officials at FDCF took appropriate steps after plaintiff reported the alleged assault. Indeed, there is no evidence that any inmate assaulted plaintiff between June 6, 2014, and March 10, 2015, the date plaintiff left FDCF. As such, there is no evidence that any defendant was deliberately indifferent to plaintiff's safety after June 5, 2014.

Moreover, to the extent that plaintiff contends he should have received follow-up medical treatment and/or counseling, the record does not support this argument. The Eighth Amendment places a duty on jail and prison officials to provide inmates with necessary medical attention. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Weaver v. Clark*, 45 F.3d 1253, 1255 (8th Cir. 1995). "In this context, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm." *Weaver*, 45 F.3d at 1255 (comparing *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976) (existing medical needs) with *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993) (risk of future harm to health)). An Eighth Amendment violation occurs only when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (citations omitted); *see also Helling*, 509 U.S. at 32; *Estelle*, 429 U.S. at 106; *Jolly v. Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442, 445-47 (8th Cir. 1995).

Plaintiff has not produced evidence indicating that he had serious medical needs or faced an acute or escalating medical situation. Nor has he produced evidence that the

named defendants knew of and disregarded an excessive risk of serious harm to his health or safety. *Cf. Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (concluding that mere negligence in relation to medical treatment does not rise to a constitutional violation); *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992) (stating that mere negligent failure to diagnose or treat a condition does not give rise to a valid claim of mistreatment); *Bailey v. Gardebring*, 940 F.2d 1150, 1154-55 (8th Cir. 1991) (addressing lack of psychiatric treatment). Indeed, plaintiff acknowledges that the defendants took him to the hospital, confined him in a protective, single cell on Boone-Unit, placed the Alleged Assailant in a different area and conducted an investigation. The undisputed facts do not establish that more needed to be done, and, consequently, a constitutional violation did not occur.

Based on the foregoing, I find that the defendants are entitled to judgment as a matter of law on plaintiff's failure-to-protect claim.[3]

## D. The Retaliation Claim

Plaintiff's January 6, 2015, supplement to his complaint includes a claim for retaliation. Doc. No. 10. More specifically, it alleges that the defendants are "keeping me in [the] hole for two to three years for this lawsuit." *Id*. With respect to this claim, I previously stated:

---

[3] Plaintiff did not assert that he was suing the defendants in their individual capacities. Consequently, the plaintiff only sued the defendants in their official capacities. *See Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) (noting that it is assumed that a plaintiff is suing a defendant only in his or her official capacity if a plaintiff does not expressly and unambiguously state that a defendant is being sued in his or her individual capacity). Plaintiff did not, however, allege that a constitutional injury occurred pursuant to an unconstitutional policy or as a result of a failure to properly supervise or train an employee. As such, the failure-to-protect claim is subject to dismissal for this reason, as well. *See id.* at 766-67 (determining that plaintiff failed to set forth sufficient facts to show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation).

12

> "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (stating that "exhaustion in cases covered by § 1997e(a) is now mandatory"); *Washington v. Uner*, 273 F. App'x 575, 576-77 (8th Cir. 2008) (applying § 1997e(a)). Proper exhaustion of administrative remedies is necessary so that corrections officials are afforded the "'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter*, 534 U.S. at 525). And, despite the fact that exhaustion is an affirmative defense that a defendant bears the burden of proving, a court may still raise the issue of exhaustion sua sponte if it is plain on the face of the complaint that a grievance procedure is unexhausted. *See Jones v. Bock*, 549 U.S. 199, 214-16 (2007) (clarifying that a complaint cannot be dismissed sua sponte for failing to plead and prove exhaustion but failure to exhaust can be a basis for dismissal for failure to state a claim if the allegations in the complaint suffice to establish that ground).

Doc. No. 19 at 4. I then pointed out that the timing of the alleged retaliation suggests plaintiff did not submit a grievance or exhaust the procedures available to him prior to commencing the instant lawsuit. *Id*. at 5.

In their answer (Doc. No. 15), defendants asserted that plaintiff did not properly exhaust his administrative remedies as 42 U.S.C. § 1997e(a) requires. *See Jones*, 549 U.S. at 211-17 (stating that the failure to exhaust is an affirmative defense). Consistent with my June 25, 2015 order, defendants then supplemented the record by filing the nine grievances plaintiff submitted to FDCF between April 3, 2014, and August 21, 2014. Doc. No. 20; *see also Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (stating that a defendant has the burden of proving the failure to exhaust).

None of the nine grievances submitted prior to August 21, 2014 concerned retaliation by the named defendants. Doc. No. 20 at pp. 4-30. Moreover, the statement plaintiff included in his complaint only addressed the grievance he submitted as a result of the alleged sexual assault. Doc. No. 1 at p. 2; *see also Lyon v. Vande Krol*, 305 F.3d 806, 808-09 (8th Cir. 2002) (42 U.S.C. § 1997e(a) does not permit a court to consider a prisoner's subjective beliefs in determining the availability of administrative remedies). Therefore, I find that the plaintiff failed to exhaust the administrative remedies that were available to him. *See Kendrick v. Pope*, 671 F.3d 686, 689 (8th Cir. 2012) (finding that plaintiff failed to comply with 42 U.S.C. § 1997e(a)); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (concluding dismissal is required when an inmate has not administratively exhausted before filing a lawsuit in district court).

Alternatively, the record does not establish that unconstitutional retaliation occurred. "To prevail on a retaliation claim, [a plaintiff] must show 1) he engaged in a protected expression, 2) he suffered an adverse action, and 3) the adverse action was causally related to the protected expression." *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004)). An inmate claiming retaliation is required to meet a substantial burden of proving the actual motivating factor for the adverse action, such as placement in administrative segregation, is as alleged. *See Griggs v. Norris*, 297 F. App'x 553, 555 (8th Cir. 2008); *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996); *Goff v. Burton*, 7 F.3d 734, 736-38 (8th Cir. 1993); *see also Haynes v. Stephenson*, 588 F.3d 1152, 1155-57 (8th Cir. 2009) (discussing prima facie case of retaliatory discipline). "Merely alleging that an act was retaliatory is insufficient." *Meuir v. Green Cnty. Jail Emp.*, 487 F.3d 1115, 1119 (8th Cir. 2007) (citing *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)).

Here, the record does not support a finding that but for an unconstitutional, retaliatory motive plaintiff's placement in A-Unit would not have occurred. Indeed, the record reveals that plaintiff was placed in A-Unit after investigators concluded that he had

not been sexually assaulted, after plaintiff became angry about the investigation, after plaintiff was threatened for snitching and after another inmate tried to attack him. In addition, plaintiff's placement in A-Unit occurred on July 8, 2014, which was prior to the plaintiff's submission of the July 11, 2014, grievance and prior to the plaintiff's commencement of the instant lawsuit on August 21, 2014. Based on this record, I find defendants are entitled to summary judgment on plaintiff's retaliation claim.[4]

### E. Qualified Immunity

Having concluded that the record fails to establish a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies and whether defendants violated plaintiff's constitutional rights, I find that it is not necessary to engage in a lengthy discussion of defendants' qualified immunity defense. Nonetheless, I note that qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986). I conclude that the summary judgment record does not establish that it would have been clear to a reasonable officer that defendants' conduct was unlawful in the situation that they confronted. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). As such, I find that qualified immunity provides an additional, alternative basis for recommending the entry of summary judgment in favor of defendants.

---

[4] As explained in note 3, *supra,* plaintiff did not assert that he was suing the defendants in their individual capacities. The retaliation claim is subject to dismissal for this reason, as well. *See Alexander*, 718 F.3d at 766-67.

15

## V. CONCLUSION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that defendants' motion (Doc. No. 16) for summary judgment be **granted** and that judgment be entered against plaintiff and in favor of defendants.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**
**DATED** this 20th day of August, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE